**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,                          Case No. 24-cr-301 (DSD/DLM)

           Plaintiff,

v.                                                 **REPORT AND**
                                                   **RECOMMENDATION**
Tamarick Leandre Shaffer,

           Defendant.

This matter is before the Court on Defendant Tamarick Shaffer's Motion to Dismiss (Doc. 27) and Motion to Suppress Evidence (Doc. 28). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

The Court held an evidentiary hearing on Mr. Shaffer's motions on February 26, 2025. (Docs. 34 (Minutes), 37 (Motion Hearing Transcript, hereinafter referred to as "Tr.").) Ruth Shnider represented the government. Karen Mohrlant represented Mr. Shaffer, who was present at the hearing. For the reasons explained below, the Court recommends that both Mr. Shaffer's Motion to Dismiss (Doc. 27) and Motion to Suppress Evidence (Doc. 28) be denied.

**BACKGROUND**

On November 12, 2024, Mr. Shaffer was charged by single-count indictment with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (*See generally* Doc. 1.) The indictment alleges that Mr. Shaffer possessed a

firearm on October 22, 2024, knowing he had been previously convicted of a felony. (*See id.*).

Mr. Shaffer's Motion to Dismiss attacks the statutory basis for his charges, both facially and as applied, as inconsistent with his Second Amendment right to bear arms. (Doc. 27.) In Mr. Shaffer's Motion to Suppress Evidence and memorandum in support of that motion, he asserts that law enforcement seized him without reasonable suspicion, and that the evidence discovered as a result of law enforcement's seizure must be suppressed. (Docs. 28 (Motion), 38 (Memorandum).)

At the evidentiary hearing, the Court received Government Exhibits 1 and 2 and heard live testimony from St. Paul Police Officer Logan Goss. The evidence revealed these facts. Around 3:00 a.m. on the morning of October 22, 2024, Officer Goss and his partner Officer Deininger observed Mr. Shaffer and a juvenile "mosey[ing]" down alleyways, wearing ski masks. (Tr. at 11-12.) The officers found the ski masks suspicious because it was a "warmer fall night" and the officers themselves were wearing short sleeves. (Tr. at 13.) During his testimony, Officer Goss stated that he believed, based on his observations, that the two were "potentially prowling cars, looking for unlocked motor vehicles to steal electronic items from, potentially . . .  finding an unlocked garage." (Tr. at 14.) Officer Goss and Officer Deininger watched the individuals walk down the alley, but the officers did not see them try to enter any vehicles or garages, or rummage through property. (Tr. at 30-31.) The officers approached the pair in their marked squad car without turning on their emergency lights or sirens. (Tr. at 15.) The officers were in uniform, but had no weapons

drawn when they exited their vehicle to speak with Mr. Shaffer and the juvenile. (Tr. at 15.)

Officer Deininger said, "Hey guys"; "What's going on?"; "Could you come over here? I'd like to talk to ya." (Gov't Ex. 1 at 1:00; Gov't Ex. 2 at 00:50). The officers could see that the juvenile was wearing gloves. (Tr. at 17.) Mr. Shaffer began turning to walk away and Officer Deininger said "Don't run . . . Don't run, you're gonna get caught, man." (Gov't Ex. 1 at 1:05; Tr. at 18). Mr. Shaffer protested, asserting that law enforcement had no basis to stop him. (Gov't Ex. 2 at 1:00-15.) Officer Deininger directed Mr. Shaffer to show his hands, which he did, but then Mr. Shaffer backed away from the officers with his hands in the air, continuing to contest the encounter. (Gov't Ex. 2 at 1:00-15.) Officer Deininger explained to Mr. Shaffer that because the two had on masks, and the juvenile had on gloves, the officers believed they had reasonable suspicion to stop and identify them. (Gov't Ex. 2 at 1:00-15.) Officer Goss told Mr. Shaffer to put his hands behind his back, and Mr. Shaffer then took off running. (Gov't Ex. 2 at 1:15-27; Tr. at 19.)  The officers chased down Mr. Shaffer, grabbed him by his sweatshirt, and brought him to the ground. (Gov't Ex. 1 at 1:35-45.) As Officer Goss placed handcuffs on Mr. Shaffer and rolled him to his back, Mr. Shaffer announced that he had a firearm in his pants.[1] (Gov't Ex. 2 at 2:00-30.)

---

[1] Mr. Shaffer does not challenge the constitutionality of this statement.

## ANALYSIS

### I.  MR. SHAFFER'S MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED.

The Court first addresses Mr. Shaffer's Motion to Dismiss (Doc 27). Mr. Shaffer moves the Court for dismissal of the indictment on the basis that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to him under the Second Amendment of the United States Constitution. Mr. Shaffer cites the United States Supreme Court's 2022 decision *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), in which the Court announced that the Second Amendment presumptively protects an individual's bearing of a firearm in public, and the government may not constitutionally regulate such conduct unless the regulation "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127. Since *Bruen*, the Eighth Circuit has found the law to be constitutional, without need for resort to any "felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *United States v. Jackson,* 110 F.4th 1120, 1125 (8th Cir. 2024); *United States v. Cunningham*, 114 F.4th 671, 675 (8th Cir. 2024), *reh'g denied*, No. 22-1080, 2024 WL 4031748 (8th Cir. Aug. 30, 2024)

Mr. Shaffer concedes that current Eighth Circuit law requires this Court to deny his motion. The Court agrees, and therefore recommends that Mr. Shaffer's Motion to Dismiss (Doc. 27) be denied.

II.   **MR. SHAFFER'S MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED.**

The Court turns next to Mr. Shaffer's Motion to Suppress Evidence (Doc. 28). Mr. Shaffer moves the Court to suppress the firearm found on his person, arguing that law enforcement lacked reasonable suspicion to stop him. Mr. Shaffer's motion focuses on the moments during his interaction with law enforcement *before* he tried to flee from the police. But he does not dispute that once he started running away, law enforcement had a lawful basis to seize him. The government contends that the Court should deny Mr. Shaffer's motion for two reasons. First, from the government's perspective, Mr. Shaffer was not seized for Fourth Amendment purposes during the challenged portion of his encounter with law enforcement. Second, the government argues that, even if Mr. Shaffer were seized during the initial moments of the encounter, law enforcement had reasonable suspicion to stop him.

A.   **Mr. Shaffer was not seized until law enforcement tackled him.**

To begin, the Court determines the point at which law enforcement seized Mr. Shaffer. According to Mr. Shaffer, he was seized at the moment he stopped walking away from law enforcement and raised his hands. In Mr. Shaffer's estimation, this momentary compliance amounts to actual submission to law enforcement's show of authority and thus constitutes his seizure. The government asserts that any compliance on Mr. Shaffer's behalf was temporary and therefore did not constitute actual submission, and so no seizure. In the government's view, Mr. Shaffer was not seized until law enforcement tackled him to stop him from running away.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "A person is seized by [law enforcement] and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority terminates or restrains [their] freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (2007) (cleaned up)). Law enforcement need not use physical force to affect a seizure and may accomplish the result by a show of authority. *Id*. (citing *California v. Hodari D.,* 499 U.S. 621, 626, n. 2 (1991)). But unless a person actually submits to law enforcement's show of authority, there is no seizure. *Id*. (citing *Hodari D.,* 499 U.S at 626, n. 2). A law enforcement officer's attempt to seize a person, standing alone, does not amount to a Fourth Amendment seizure. *United States v. Flores-Lagonas,* 993 F.3d 550, 560 (8th Cir. 2021) ("Because the officers merely attempted to stop Flores-Lagonas as he continued to flee . . . they did not seize him in the parking lot. Put simply, there was no stop.") Nor does a person's temporary compliance with law enforcement's commands amount to actual submission. *United States v. Baldwin*, 496 F.3d 215, 218 (2d Cir. 2007) ("We hold that, to comply with an order to stop—and thus to become seized—a suspect must do more than halt temporarily; he must submit to police authority, for 'there is no seizure without actual submission[.]'") (collecting cases) (citing *Brendlin* at 254).

Here, it is true that Mr. Shaffer complied with law enforcement's discrete command to show his hands and temporarily followed Officer Deininger's command not to run. But close review of both officers' body-worn camera footage confirms Mr. Shaffer's evasion

of, rather than submission to, law enforcement's show of authority. The BWC footage shows that Mr. Shaffer immediately turned away from the officers when they exited their vehicle and began to walk away from them. Although he paused for a moment, he continued moving backward as the officers moved closer to him. After a few seconds, Mr. Shaffer lowered his hands and argued with the officers about their authority to stop him. Then, when Officer Goss ordered Mr. Shaffer to put his hands behind his back, he took off running. Although the officers may have attempted to seize Mr. Shaffer through his compliance with their verbal commands, he never actually submitted to their show of authority. It was only after the officers chased after him and tackled him to the ground that Mr. Shaffer was seized through law enforcement's use of physical force.

Mr. Shaffer cites *United States v. Hayden,* 759 F.3d 842, 847 (8th Cir. 2014) for the proposition that his compliance with the officers' command to show his hands and remove them from his pockets amounts to actual submission to their show of authority. (Doc. 38 at 7.) But while *Hayden* may appear like Mr. Shaffer's case at first blush, it is factually distinct in an important way. In *Hayden*, law enforcement officers stopped Mr. Hayden and his companion after the officers observed the two men "wearing dark clothing and standing relatively close to a vacant home." 759 F.3d at 844. "Both men appeared to be wandering around the residence," and "the man closer to the sidewalk was looking up and down the street, and that the man closer to the home glanced in a window." *Id*. Based on their observations, the officers believed the two men were about to commit burglary. *Id*. The officers pulled up alongside the men in their squad car, and one of the officers exited the car, shined a flashlight, and yelled "Police!" *Id*. "[Mr.] Hayden turned away from the light

7

and put his hand into his right jacket pocket." *Id*. The officer ordered him to remove his

hand from the pocket, and Mr. Hayden complied. *Id*. The officer frisked Mr. Hayden and

discovered a firearm in Mr. Hayden's right jacket pocket. *Id*. The *Hayden* court concluded

that Mr. Hayden "was seized when he turned his body away from [the officer] reached his

hand into his jacket pocket and complied with [the officer's] command that he remove his

hand from his pocket." *Id*.

But the circumstances here are different. Although Mr. Shaffer paused and lifted his

hands as the officers directed, unlike *Hayden*, he continued to back away from the officers

as they tried to move closer to him. Even during his moment of compliance, Mr. Shaffer

never allowed the officers to get close enough to him touch him—let alone frisk him. And

when the officers directed Mr. Shaffer to put his hands behind his back, he refused and

took off running. The Court thus concludes that Mr. Shaffer's halfhearted and fleeting

compliance with the officers' commands was not an adequate submission to law

enforcement's show of authority to amount to a seizure.[2] Mr. Shaffer was not seized until

law enforcement tackled him to the ground, using physical force to restrain his movement.

---

[2]Because the Court finds that Mr. Shaffer's initial encounter with law enforcement—before
he was tackled—was not a seizure for Fourth Amendment purposes, the Court declines to
address whether the officers had reasonable suspicion to stop Mr. Shaffer in the first place.
*See Flores-Lagonas,* 993 F.3d at 560 ("Without a stop, a reasonable suspicion analysis is
unnecessary.") That said, the evidence presented here was that officers encountered two
people wandering through an alleyway as if it was a thoroughfare in the dead of night,
wearing out-of-season gear that could conceal their identities. Given this, the officers'
decision to approach Mr. Shaffer and his companion was far from baseless.

**B.     Law enforcement had probable cause to arrest Mr. Shaffer once he ran from them.**

Mr. Shaffer does not dispute that law enforcement had a lawful basis to seize him once he tried to run from the officers. Indeed, the Eighth Circuit has consistently held that a person's "flight or resistance in response to a *Terry* stop or arrest, even an unlawful arrest, can provide an independent basis for an arrest." *United States v. Somerville,* No. 20-cr-153 (PAM/KMM), 2021 WL 3476596, at \*8 (D. Minn. May 13, 2021), (collecting cases) *R. & R. adopted*, 2021 WL 2886257 (D. Minn. July 9, 2021), *aff'd sub nom. United States v. Finley,* 56 F.4th 1159 (8th Cir. 2023).

Mr. Shaffer's flight from officers provided independent probable cause to arrest him for fleeing police under Minn. Stat. § 609.487(6).[3] The record before the Court establishes that the officers believed they were acting in the lawful discharge of their duties when they approached Mr. Shaffer, and to evade them Mr. Shaffer ran. Both officers were in uniform and driving a marked squad car when they approached Mr. Shaffer. The officers asked Mr. Shaffer to come to them so they could identify him. When Mr. Shaffer protested law enforcement's presence, Officer Deininger explained their basis for approaching Mr. Shaffer and his companion—the two had on masks, the juvenile had on gloves, and the officers believed they had reasonable suspicion to stop and identify them. In response to Officer Goss's command to put his hands behind his back, Mr. Shaffer refused and took

---

[3] **Fleeing, other than vehicle.** Whoever, for the purpose of avoiding arrest, detention, or investigation, or in order to conceal or destroy potential evidence related to the commission of a crime, attempts to evade or elude a peace officer, who is acting in the lawful discharge of an official duty, by means of running, hiding, or by any other means except fleeing in a motor vehicle, is guilty of a misdemeanor. Minn. Stat. § 609.487(6).

off running. Based on these facts, it was reasonable for the officers to conclude that Mr.

Shaffer was attempting to avoid being arrested by running away. As a result, Mr. Shaffer's

flight from law enforcement provided probable cause for his arrest.

For these reasons, the Court recommends that Mr. Shaffer's Motion to Suppress

Evidence (Doc. 28) be denied.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings above, **IT IS**

**RECOMMENDED** that:

1. Defendant Tamarick Shaffer's Motion to Dismiss (Doc. 27) be **DENIED**; and

2. Mr. Shaffer's Motion to Suppress Evidence (Doc. 28) be **DENIED**.


Date: May 15, 2025                               *s/Douglas L. Micko*
                                                  DOUGLAS L. MICKO
                                                  United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).